THOMAS GRAY, d. b. a. vs. MAYOR & COUNCIL OF WILMINGTON, p. b. r.

New Castle County, May Term, 1896.

**Municipal Corporation. License.**—The power to demand a license from persons engaged in the sale of milk is not necessarily implied from authority granted by a municipal charter to provide against its adulteration and for its inspection.

**Same.**—The City Council of Wilmington has no authority under its charter either expressly granted or necessarily implied to impose or require a license from persons engaged in the milk trade.

**Same. Ordinance.**—When a municipal charter provides that the Council shall not have power to pass any ordinance exempting any person from the operation of any ordinance or municipal regulation a municipal ordinance requiring payment of a license fee by all persons engaged in the milk trade, but exempting those who sell less than twenty quarts per day, is invalid.

This was a *certiorari* to the Municipal Court of the City of Wilmington. The following statement of facts agreed upon, to be considered as if a case stated had been filed in the Municipal Court for the purpose of placing the facts agreed to upon the record of that court.

The Council of the City of Wilmington, on the 18th day of April, 1895, passed at the City Hall, an ordinance, entitled "An Ordinanc to provide Against the Adulteration of Milk and Cream, and to provide for the Inspection thereof." Which ordinance (with the exception of Section Seven, which was repealed by a further ordinance entitled "An Ordinance to amend an Ordinance, entitled an Ordinance to Prevent the Adulteration of Milk and Cream, and to provide for the Inspection thereof," passed by the Council, June 20, 1895"), is in substance as follows:

SECTION 1. That the Council shall elect a "Milk Inspector" whose duty it shall be to inspect the milk and cream offered for

sale in the City of Wilmington, and to execute the rules of the Health Department of the City relating to the sale of milk.

SECTION II. That the inspector shall record in books kept for that purpose, the names and places of business, or *residence of all persons* engaged in the sale of milk and cream.

SECTION III. Provides that all persons desiring to engage in the business of selling milk or cream in the City of Wilmington shall apply to the Board of Health for a license. They shall pay for said license annually, the sum of ten dollars ($10). Provided that all persons engaged in merchandise business, and who shall not sell an excess of twenty quarts of milk or cream per day, shall be exempt from the provisions of this Section.

SECTION IV. Provides for the inspection of all dairies, the owners of which offer milk or cream for sale within the limits of the city.

SECTION V. Provides *penalty* for the sale of impure milk, milk from diseased or sick cows, or failure to take out license.

SECTION VI. Provides *penalty* for the sale of skim milk as pure milk.

SECTION VII. *Struck out by subsequent ordinance.*

SECTION VIII. Provides what standard for milk shall be.

SECTION IX. Provisions as to unclean or impure milk.

SECTION X. Provisions as to the name of the owner being on wagon and also number of license.

SECTION XI. Authority to inspect and prosecute.

SECTION XII. Fines and fees for licenses for use of city.

SECTION XIII. Salary of Milk Inspector to be one thousand dollars ($1,000) per annum.

SECTION XIV. Repeals all inconsistent ordinances.

Thomas Gray, the above named defendant, was, at the time of, and after the passage of said ordinance, engaged in the business of selling milk and cream in the City of Wilmington. He was not then engaged in the merchandise business, and sold in excess of twenty quarts of milk and cream per day, and did not take out a license for such sale as provided in Section III of said ordinance.

*H. H. Ward,* for the defendant below, appellant.

The charter provisions involved in this question, or which may be relied upon by the plaintiff below to confer the authority upon the City Council to require a license from the defendant as a condition for doing business in the city as a milkman, must be included in the following provisions :

" The Council may also pass ordinances    *    *    *    *    to provide against the adulteration of milk and cream, sold, or bought to be sold, in the said city, and to provide for the proper inspection of the same." City Charter, § 31, Ch. L. & Ord. 46.

" And in general shall have power to do all those matters and things for the well being of the said city, which shall not be in contravention of any existing laws of this State, or the Constitution thereof." City Charter, § 31, Ch. L. & Ord. 47.

The Board of Health of the city have no power, express or by fair implication, to require a license, for any purpose. Its powers are limited to those expressed in the charter of the city. City Charter, §§ 31, 137; Rev. Code, 298, 362-364; 16 Del. Laws Ch. 345.

Municipal corporations possess no powers or faculties not conferred upon them, either expressly or by fair implication, by the law which creates them, or by other statutes applicable to them; 15 Am. & Eng. Encyc. of Law. 1040; 1 Dillon, Mun. Corp. § 89; Sutherland, Stat. Constr. § 380; Cooley Const. Lim. 191, 194, 195.

It is the policy of the law to require of such corporations a strict observance of their powers. Any doubt or ambiguity arising out of the terms used by the Legislature in making a grant of power, must be resolved in favor of the public; and a power cannot be exercised where it is not clearly comprehended within the words of the act, or derived therefrom by necessary implication; 15 Am. & Eng. Encyc. of Law 1041; Sutherland, Stat. Constr. § 380; *Dunham vs. Rochester,* 5 Cowen 462; *Caldwell vs. Alton,* 33 Ill. 417, 418; 1 Dillon, Mun. Corp. §§ 89, 91 & notes.

When in the city charter there is an enumeration of subjects, including the matter in question, concerning which the city may legislate, and a general welfare clause giving general authority to do anything which is for the well being of the city, which is not in contravention of the laws and Constitution of the State, the city is limited in its legislation as to the matter in question and so enumerated, to the powers specifically granted concerning said subject matter. The expression or necessary implication of certain powers concerning the subject in question, excludes by necessary implication all other powers relative to that matter. The general empowering clause of the charter cannot be construed to enlarge the powers expressed and necessarily implied in the special provision of the charter; 1 Dillon, Mun. Corp. § 315, p. 392, p. 468, n; *State vs Ferguson*, 33 N. H. 424; *Borough of Millerstown vs. J. M. Bell et al.*, 123 Pa. 151; *Child vs. Hudson Bay Co.*, 2 P. Wms. 267; Angel & Ames, Corp. 177; *Felt vs. Felt*, 19 Wis. 208, 212; Sutherland, Stat. 412; *St. Paul vs. Traeger*, 25 Minn. 248, 252.

The extent of the police powers of municipal corporations depends upon the limitations of their charters. Where there is a grant of police power concerning specific matter, such grant, although partially or imperfectly giving control of such matter to the corporation, constitutes a limitation upon the police power of the corporation in respect to such matter; the existence of the express grant shows that the legislative mind was specially directed to that subject, and the grant must be taken as the limit of its intention, although imperfectly expressed and imperfectly given; 2 Beach, Pub. Corp. 468, n. 1.

A statute or by-law interfering with a legitimate industry, or in restraint of trade, must be strictly construed. Such interferences are justified only in cases of imperative necessity, and under statutes plainly expressing the intent; Sutherland, Stat. Constr. § 367, 370; *Dunham vs. Rochester*, 5 Cowen. 462; *Borough of Millerstown vs. J. M. Bell et al.*, 123 Pa. 151; *Barling vs. West et al.*, 29 Wis. 307; 2 Beach, Pub. Corp. §§ 1252, 1253, 390.

A municipal corporation has no power to require a license, in order to carry on a certain pursuit, unless it be expressly granted, or arise by clear implication from language used; Cooley, Taxation 408; 2 Beach, Pub. Corp. § 1252; 1 Dillon, Mun. Corp. § 361; *Dunham vs. Rochester,* 5 Cowen 462; *Commonwealth vs. Stodder,* 2 Cush. 562, 571, &c.; *City of St. Paul vs. Traeger,* 25 Minn. 248, 252, &c.; *Barling vs. West et al.,* 29 Wis. 307; *Fowler vs. Alexander,* 3 Peters 263.

The only express powers of licensing vested by statute in the City of Wilmington are for the erection of wharves, to shows, and to infected vessels. Wilmington Ch. L. & Ord. pp. 130, 276; Del. Rev. Code, 363.

The license fee required in the case at bar is the sum of ten dollars. It is therefore much larger than is sufficient to pay the cost of merely issuing a license. Any excess out of this license fee above the cost of issuing the license is therefore a tax; *Mays vs. Cincinnati,* 1 Ohio St. 268.

The only powers of taxation, outside of special assessments for paving, curbing, &c., expressly conferred on the corporation of the City of Wilmington, are to levy taxes for City and School purposes on land, capitation, stock, plate, horses, mules, &c., telegraph, telephone and electric light poles; Wilmington Ch. L. & Ord. pp. 31, 32, 33, 60, 61, 62, 69.

The only other revenues of the city authorized by its charter, are derived from fines and forfeitures incurred for violations of the Charter and ordinances, water rents, sales of real estate and leasing of wharves. Wilmington Ch. L. & Ord. pp. 96, 134, 118, 270, 277.

The power of a municipal corporation to tax, must be specially and expressly conferred. No power to tax, which is not expressly conferred, can be exercised by a municipal corporation. The City of Wilmington is no where expressly given authority to raise revenue by licensing useful occupations. Such authority cannot be implied. In the case at bar, it can at the utmost only be argued by plaintiff below that a power to license may be implied from the

words of the Charter relating to milk.     It is submitted however, that there is no room for the argument that an implied power to tax may be based upon the implication of a power to license ; Cooley, Taxation 387 ;  2 Dillon, Mun. Corp., § 764 ;  *Commonwealth vs. Stodder*, 2 Cush. 562, 571, &c.; *Kip vs. City of Patterson*, 2 Dutch. 298, 301 ; *Mays vs. Cincinnati*, 1 Ohio St. 269, 273, &c.; *North Hudson Co. Ry. vs. Hoboken*, 41 N. J. Law, 71, 78-81 ; Cooley, Const. Lim. 201.

*Harman*, for the plaintiff below, respondent.

.     · The appointment or election of an inspector, and the enact-ment of proper rules and regulations to carry out the provisions of the Charter, and prevent the evils which might arise from the sale of impure milk and cream, cannot be considered as other than a duty imposed upon " the Council " by the Legislature.

The power to make by-laws is limited.     They must be:     (1) In subordination to the Federal and State Constitutions.     (2) In harmony with general laws of the State, and the provisions of the Municipal Charter.     (3) Reasonable, which means that they should tend in some degree, to the accomplishment of the objects for which the corporation was created, and its powers confirmed ; Cooley, Const. Lim. 238.

. 1. This ordinance was clearly an inspection law, and intended to preserve the health of the city, and as such does not conflict with either Constitution.     Indeed, the right to pass such laws, and levy duties necessary to render them effectual, is undoubted, and is expressly recognized by the Constitution ;  Const. U. S. Art. 1, § 10 ;  Cooley, Const. Lim. 6th ed. 716-721.

Laws providing for the detection and prevention of imposition and fraud, as a general proposition are free from constitutional objection ;  Tiedman, Police Lim. § 89.

Laws and ordinances relating to the comfort, health, conveni-ence, good order, and general welfare of the inhabitants and com-prehensively styled, " Police laws or regulations," and (though they

may disturb the enjoyment of individual rights), are not unconstitutional. They rest upon the maxim, *salus populi suprema est lex*, and that fundamental rule of both the human and natural law, *sic utere tuo ut alienum non laedas : id.* §§ 1-5 ; Dillon, Mun. Corp. § 141.

"The object of inspection laws is to improve the quality of articles produced by the labor of a country, to fit them for exportation, or it may be for domestic use. Inspection laws, quarantine laws, health laws of every description, all can be most advantageously exercised by the States themselves. * * * * No direct power over these objects is granted to Congress, and consequently they remain subject to State legislation, except for national purposes." Marshall, C. J., in *Gibbons vs. Ogden*, 9 Wheat 1 ; Cooley, Const. Lim. 723.

2. The ordinance is in harmony with the general laws and the Charter of the city.

Ample provision has been made in the general laws of the State for the protection of the health of the citizens generally, the inspection of vessels, breadstuffs, &c., but the Legislature have left to the City of Wilmington those powers which could be exercised to the greatest advantage by the citizens themselves, and which were absolutely necessary for their well-being and safety.

3. This ordinance is reasonable, fair and general, and tends to the accomplishment of the objects for which the corporation was created, and for which the powers were conferred.

The construction of ordinances is governed by the same canons of construction which are employed in the interpretation of statutes ; Beach, Mun. Corp. 517 ; *In re Yick Yo vs. Hopkins, Sheriff*, 68 Cal. 294 ; *State vs. Kin kley St.*, 29 Md. 85.

Essentially penal provisions are strictly construed, but ordinary police regulations, even though a penalty be attached, are not subject to so close a scrutiny ; Beach, Mun. Corp. §517 ; *Municipality vs. Cutting*, 14 La. Ann. 335 ; *Rounds vs. Mumford*, 2 R. I. 154 ; *Merrian vs. New Orleans*, 4 La. Ann. 318 ; 26 Conn. 406. If an ordinance be susceptible of two constructions, that one must

prevail which will preserve its validity in preference to a construction that will render it invalid, and this must be done although the construction adopted may not be the most obvious or natural or literal one; *Johnson vs. Philadelphia,* 60 Pa. 445; *Rosevelt vs. Godard,* 52 Barb. 533; *Coldwell vs. Landing Co.,* 19 N. J. Eq. 245; Cooley, Const. Lim. 184; Beach, Mun. Corp. § 517.

An ordinance cannot be held to be unreasonable which is expressly authorized by the Legislature. The power of a Court to declare an ordinance unreasonable and therefore void, is practically restricted to cases in which the Legislature has enacted nothing on the subject-matter of the ordinance, and consequently to cases in which the ordinance was passed under the supposed incidental power of the corporation merely; *Coalfloat vs. Jeffersonville,* 112 Ind. 19.

The presumption is always in favor of reasonableness of the ordinance; 2 Am. & Eng. Corp. Cas. 23; *Van Hook vs. Selma,* 70 Ala. 361; *State vs. Trenton,* 50 N. J. L. 338; 51 *id.* 498; *Clason vs. Milwaukee,* 30 Wis. 316; *Municipality vs. Blineau,* 3 La. Ann. 688; Beach, Mun. Corp. §§ 512–513.

The power conferred on the City Council to establish ordinances regulating business on the streets of the city, is a police power, and every ordinance should receive a reasonable interpretation so as best to subserve the purpose and promote the object, that is to say, the true and legitimate purpose and object for which the power to establish the ordinance was granted in the charter; *Homeward vs. Wilmington,* 5 Houst. 123.

While the charter of Wilmington did not, in words, specify that an inspection fee be charged in order to meet the costs that were entailed in carrying the ordinances into effect, nor what the particulars of the health, market or milk inspection ordinances should be, yet it does in Section 31, properly construed, give ample power both to charge a license fee to cover the cost of inspection, and to oblige every person offering milk for sale from a wagon to have painted on both sides of said wagon, in a conspicuous place, the name in full of the owner thereof, and the number of his

license in letters not less than two inches in length. The ordinance is a police rule or regulation, and is entitled to receive the construction generally applied to laws intended to preserve the health of the inhabitants of a city; Beach., Mun. Corp. § 983; Dillon, Mun. Corp. § 141 ; Cooley, Const. Lim. § 572.

The powers possessed by a municipal corporation include : (1) those expressly granted ; (2) necessarily or fairly implied in, or incident to the powers expressly granted; or (3) essential to the declared objects and purposes of the corporation, not simply convenient, but indispensable ; *Rabe vs. Dunlap*, 51 N. J. Eq. 40 ; 40 Am. & Eng. Corp. Cas. 220 ; Dillon, Mun. Corp. § 89.

It is an established principle that they may exercise all the powers within the fair intent and purpose of their creation which are reasonably proper to give effect to the powers expressly granted ; *id.* § 90. Under this principle it can be fairly implied from express provisions of the charter that it was intended that the Council might impose a sufficient fee in connection with the inspection of milk and cream to pay the costs of regulation and inspection. It is an occupation which requires police regulation, because of its peculiar character, in order that harm might not come to the public. The Legislature and the City Council recognize it as such. It is an occupation which is regulated by health or police laws, or ordinances in most of the States.

An occupation may be licensed and regulated if harmful, or if it threatens to become harmful; Tiedman, Pol. Lim. §§ 100–102.

While the Courts are not uniform in the presentation of the grounds upon which the general requirements of a license for all kinds of employment may be justified; on one ground or another, the right to impose the license has been very generally recognized ; *id.*

Ordinances designed to prevent the sale of adulterated milk, are within the scope of sanitary regulations; *Polinsky vs. People*, 73 N. Y. 65; *People vs. Mulholland*, 82 N. Y. 326; and in *Ash vs. People*, 11 Mich. 347, it was held that the health of the city

demanded that the power to license and regulate the vending of meats and vegetables should exist, the license was for protection and regulation, and that the exaction of five dollars was not a tax.

If a municipal regulation be lawful when intended for one purpose, and unlawful if for another, the presumption is, that the purpose was lawful unless it clearly appear otherwise; *Johnson et al. vs. Phila. et al.*, 60 Pa. 445; *Commonwealth vs. Plaisted*, 148 Mass. 375; *Welch vs. Hotchkiss*, 39 Conn. 140.

The power of a municipality to charge license fees to railways, telegraph companies, and telephone companies, cannot be questioned so long as such license is a police regulation and tends to accomplish the purpose sought; *W. U. Tel. Co. vs. Phila.*, 21 Am. & Eng. Corp. Cas. 44-46, and cases cited. The fact that the license fee is payable into the treasury of the municipality does not make such a license a tax, when the fee is reasonable and tends to promote the object of the ordinance; *East St. Louis vs. Wehrung*, 46 Ill. 392; *Johnson vs. Phila.*, 60 Pa. 445; *P. R. R. Co. vs. Phila.*, 58 *id*. 119; *Kinsley vs. City of Chicago*, 120 Ill. 359; *Ferry Co. vs. East St. Louis*, 107 Ill. 560; *Howland vs. City of Chicago*, 108 *id*. 500; *Braun vs. City of Chicago*, 110 *id*. 186; *Distilling Co. vs. City of Chicago*, 112 *id*. 19; *Dennehy vs. City of Chicago*, 120 *id*. 627.

In these cases, license fees in quite large amounts and manifestly, in part at least, for revenue, were sustained, and the force of those decisions in their application to the present case is not avoided by the fact that there was given there express power to tax, license and regulate, as the license fees were sustained under the power to license, and not under the power to tax.

This ordinance was passed to prevent the sale of impure, or adulterated milk and cream in the City of Wilmington.

The duty which the ordinance imposed on those persons desiring to engage in this occupation is a reasonable one, and is rendered necessary by the fact that the vendors have no fixed places of business as merchants or storekeepers. The ordinance provides that a license fee of $10 shall be paid by every person engaging in this

occupation, exempting, however, all persons who sell less than twenty quarts per day if engaged in a merchandise business. It is apparent, from the provisions of the ordinance, that the license fee exacted is not a tax or means of revenue to the city. It cannot be claimed that it is in any sense prohibitory of the business of selling milk and cream. It is clearly an inspection fee in the nature of a license, intended to cover as near as possible the cost of the inspection.

Property in an article is the right to have and use it subject to law. The right of sale is not an essential ingredient that may not be separated from the ownership; and a law regulating or prohibiting the sale does not take away any vested right of property; *State vs. Allmond*, 2 Houst. 612.

License laws are of two kinds: those which require the payment of a license fee by way of raising a revenue, and are therefore the exercise of the power of taxation; and those which are mere police regulations, and require the payment only of such license fee as will cover the expense of the license and of enforcing the regulation; Cooley, Const. Lim. 723; *Ash vs. People*, 11 Mich. 347.

The Courts have sustained, as being constitutional, acts providing for the marking of oleomargarine packages with plain Roman letters; *Price vs. State*, 63 Md. 592; *Commonwealth vs. Tobias*, 141 Mass. 129; for the marking of substitutes for lard; *State vs. Aslesen*, 50 Minn. 5; *Palmer vs. State*, 39 O. St. 236; branding of tubs, firkins and original packages; *Butter vs. Chambers*, 36 Minn. 69; *People vs. Girard*, 145 N. Y. 105. Hack drivers in a city may be required, for the better protection of the public, to take out licenses and wear a number or badge for identification, and all this under the exercise of police or regulation powers; 2 Beach, Mun. Corp. 1259.

The fact that the second section of the ordinance exempts persons selling less than twenty quarts of milk per day from the payment of the license fee, does not render it unfair, or partial, for the exemption only applies to those persons who are at the same

time engaged in a merchandise business, who under existing laws are already required to take out a State license, and it is only the class of persons who are engaged in business who are exempt from the payment of the fee. In all other respects every one engaged in the sale of milk must conform to the law. The object of the exemption is plainly for the purpose of avoiding the imposition of double fees on those selling less than twenty quarts of milk or cream per day.

The laws of our State furnish many illustrations of exemptions, which might seem to be *unequal* and *partial* legislation such as exemption from license to retailers of goods and peddlers of *feme sole* and *feme eovert* traders, trading in their own name, whose purchases are under one thousand dollars per annum; Rev. Code 548; the exemptions in favor of widows; laws for the benefit of mechanics and other labors.

The construction of the provisions of the Constitutions of the several States requiring "equality" and "uniformity" of taxation, are generally held not to apply to license taxes or taxation on privileges and occupations; Desty, Taxation §§ 35, 37.

If the law be otherwise unobjectionable, all that can be required in these cases is, that they be general in their application to the class, or locality to which they apply; Cooley, Const. Lim. 480, 483.

A statute regulating the charges of grain elevators, and providing such regulations shall not apply to cities having a population of less than 130,000 does not deprive persons owning elevators in cities of 130,000 population, or more, of the equal protection of the laws; *Budd vs. People,* 143 U. S. 517.

It is well settled that invalid provisions in an ordinance do not necessarily render the ordinance totally void. The rule to be applied is that if a part of a law be void, other essential and connected parts are also void, but where that part which is void is independent and not essentially connected with the remainder, the law will stand; Dillon, Mun. Corp. § 421, n; Beach, Mun. Corp. § 518; *State vs. Ernhard,* 32 Am. & Eng. Corp. Cas. 378, Wilcock,

Mun. Corp. 160 ; *State vs. Hunter*, 106 N. C. 796 ; 45 N. J. L. 318, 328; *State vs. Hurds*, 19 Neb. 323 ; *Campaw vs. Detroit*, 14 Mich. 276 ; *Wilcox vs. Heming*, 58 Wis. 144.

Test this case by the rule as laid down in these cases, and the ordinance must be sustained as to all its remaing provisions, even if that portion be declared invalid, for a complete law would remain capable of being executed and carried into effect independent of the void portion.

LORE, C. J., delivered the opinion of the Court.

The exception relied upon is that there was no authority vested by the charter of Wilmington, in the City Council to impose or require a license from persons engaged in the sale of milk. The authority vested in the City Council by the City Charter is a provision which forms a distinct and independent sentence, authorizing the city to provide against the adulteration of milk or cream sold, or bought to be sold, in the said city and provides for the proper inspection of the same.

That is all that we find, or that has been shown, in the charter relating to the subject, and it confines the right of the City Council to provide against adulteration and for proper inspection. We do not see, and certainly it has not been shown, that the right to demand a license is in any way a necessary part of that power. It certainly is not expressly granted, nor can we see how, by any necessary implication, that power could be implied. In fact, we think that on the face of the ordinance, it appears that it is not necessary, and unless expressed, we must hold that the power does not exist; under the act the entire machinery for the inspection of the milk and for preventing its adulteration is restricted in its operation so as to except all persons selling less than twenty quarts. Therefore on the face of the ordinance it is shown that the power is not necessary. In order for us to say it is necessary it ought to be either express or by necessary implication; we think it is not either.

Then, there is this further objection. Here is a general ordi-

nance for an entire class of people, which licenses those of them who sell more than twenty quarts and exempts them who sell less than twenty quarts. Section 31 of the municipal charter says, "The Council shall not have power to pass any ordinance exempting any person from the operation of any ordinance or municipal regulation." They cannot discriminate. We think both judgments ought be reversed, and so order.